**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PILOT CATASTROPHE SERVICES, INC. | No. 2:20-CV-1083-TLN-DMC |
| Cross-Claimant, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| VICTORIA MANUEL also known as VICTORIA GENE MANUEL, | |
| Cross-Defendant. | |

Plaintiff, proceeding with retained counsel, brings this civil action. Before the Court is Cross-claimant Pilot Catastrophe Services, Inc.'s motion for entry of default judgment. ECF No. 27. The motion involves two parties who were initially defendants in this action: (1) Pilot Catastrophe Services, Inc. (Pilot), and (2) Victoria Manuel. Pilot crossclaimed against Manuel for damages related to a home insurance policy belonging to Manuel's father, Peter Schmitt. A fire destroyed Schmitt's home. Pilot directed an insurance payout in Manuel's name, but she never paid off a mortgage on the property that had been subject to the fire loss. The insurer, Allstate, ultimately paid off the mortgage and sought reimbursement from Pilot. When Pilot sought recovery via a cross complaint against Manuel, Cross-Defendant Manuel failed to ever respond to that crossclaim. Pilot now seeks entry of default judgment of $112,806, the amount it paid to Allstate. After consideration of Pilot's claimed damages and submitted evidence, as well as the factors governing motions for default judgment, the undersigned United States Magistrate Judge recommends granting Pilot's

1

motion. The undersigned recommends granting default judgment for $110,943.57.

## I. BACKGROUND

**A. Factual History:**

Peter Schmitt died in November 2017. Id. at 4. At the time of his death, Schmitt owned a home in Paradise, California. Id. His daughter, Victoria Manuel, inherited the property subject to a mortgage serviced by Select Portfolio Services (SPS). Id. at 3–4. The deed of trust securing the mortgage required maintenance of an insurance policy covering the property against fire and other loss. ECF No. 1 at 3. The deed also required naming the lender as a loss payee up to the amount of any outstanding loan balance. Id. Allstate insured the property under a homeowner's policy (Policy). ECF No. 27 at 4.

The Camp Fire destroyed Schmitt's home one year after his death, in November 2018. Id. Manuel reported the loss to Allstate. Id. at 4. Allstate referred the loss investigation to Pilot, which adjusts catastrophic losses on Allstate's behalf. Id. Pilot investigated the loss. Id. Based on Pilot's investigation, Allstate issued settlement checks payable to Schmitt and SPS in the amount of $249,892.92 for damage to the property's structures and landscaping. Id.

Around January 2019, because Manuel had inherited Schmitt's property, she demanded that Allstate reissue checks in her name alone. Id. Allstate reissued checks in Manuel's name. Id. The payment then totaled $414,245.92 for damages to the property's landscaping and structures, including payment for damages to personal property. Id. Manuel cashed the checks in February 2019. Id. Pilot asserts that Allstate informed Manuel that her right to the insurance payout was contingent upon compliance with the Policy. Id. Importantly, Pilot claims responsibility for causing Allstate to issue the checks in Manuel's name alone—that is, without naming SPS. Id. at 5; ECF No. 32, Bell Decl., ¶ 4.

In April 2019, after Manuel cashed the settlement checks, SPS requested copies of the checks from Allstate. ECF No. 27 at 4. Allstate complied and sent copies. Id. SPS then requested that Allstate reissue checks—for the structure and landscaping damages—to SPS as a co-payee to cover the outstanding mortgage. See id. Allstate attempted to have Manuel pay off her mortgage obligations. Id. Manuel consistently dissembled and evaded payment for over a year. Id. She falsely

told Pilot that she was trying to satisfy or had satisfied the remaining obligation. Id. at 4–5.

Manuel never paid. Id. SPS consequently initiated this action against Allstate and Manuel on May 29, 2020. Id. at 5. SPS sought the amount due on the mortgage. Id.; ECF No. 1 at 24. SPS alleged that, as of May 2020, Manuel owed a balance of $104,303.59. ECF No. 1 at 24. Allstate settled with SPS for the balance of $104,303.59, plus a portion of SPS's costs and fees. ECF Nos. 27 at 5; 27-1, Bell Decl., ¶ 7. SPS ultimately dismissed its claims against Allstate. ECF No. 27 at 5. Allstate crossclaimed against Manuel for conversion, negligent misrepresentation, unjust enrichment, breach of contract, money-had-an-received, implied contractual indemnification, and involuntary trust, in the light of her cashing of the checks and failure to pay off her mortgage. Id. Allstate sought recovery of the money that it paid to SPS. See ECF No. 9 at 9–10, 13–14.

Because Pilot triggered Allstate's issuance of checks to Manuel without naming SPS, Pilot funded the settlement between Allstate and SPS.[1] ECF No. 27 at 5; 32, Bell Decl., ¶ 4, 8–9. Pilot specifically reimbursed Allstate for its payment of the $104,303.59 mortgage balance, plus a portion of SPS's costs and fee, in exchange for assignment of Allstate's rights against Manuel. ECF No. 27 at 5; 32, Bell Decl., ¶ 8–9. Because Pilot funded the settlement, the District Court ultimately substituted Pilot in Allstate's place as the real party in interest. ECF Nos. 20, 21. Pilot now moves for default judgment in the amount of $112,806. ECF Nos. 27 at 3, 11.

**B. Procedural History:**

Manuel has not filed any response during this action. SPS, as noted, filed this action on May 2020. ECF No. 1. Summons was issued against Manuel and returned executed. ECF No. 8. Manuel was served via substituted service on June 4, 2020. Id. at 1. The process server served a co-occupant at Manuel's home (and via mail). Id. at 1, 3.). Manuel never filed a response. Nor did Manuel respond to Allstate's crossclaim, which it served on Manuel by mail. ECF No. 9 at 15.

///

---

[1] As noted, Allstate reissued checks in Manuel's name alone. It is not immediately clear from either Allstate's crossclaim or Pilot's motion for default judgment how Pilot was involved in the reissuance process, but Pilot contends that it caused Allstate to issue checks without naming SPS. Ostensibly, Allstate reissued checks based on both Manuel's direction and some information provided by Pilot. See ECF Nos. 9 at 8; 27 at 4–5; 32, Bell Decl., ¶ 4.

When Manuel let the complaint go unanswered, SPS requested entry of default on August 7, 2020. ECF No. 10. The clerk entered default on August 10, 2020. ECF No. 11. After SPS and Allstate settled around September 2020, Allstate also requested entry of default against Manuel. ECF No. 14. Allstate requested entry of default on its crossclaim against Manuel. Id. The clerk entered default against Manuel on the crossclaim on September 23, 2020. ECF No. 15. The same day, Allstate filed a Certificate of Service indicating that a copy of the clerk's entry of default was mailed to Manuel. ECF No. 16. Once SPS settled with Allstate and Pilot, Manuel was also served with a copy of the stipulation of SPS's dismissal as to its claims against her. ECF Nos. 17 at 3. Allstate's crossclaim remained pending. Id.; ECF No. 8.

The case then remained pending for a few months without any action. The District Judge, in April 2021, ordered Allstate to file a status update. ECF No. 19. Pilot filed its motion for substitution the next day. ECF No. 20. The District Judge granted that motion on April 5, 2021. ECF No. 21. SPS, Allstate and Pilot then filed a new stipulation, agreeing that SPS would dismiss its claims against Manuel, and that Pilot's crossclaim now remained pending. ECF Nos. 23–24. Pilot moved for default judgment on May 13, 2021. ECF No. 27. That motion is now before this Court.

Pilot appeared before the Court on June 15, 2021. The Court indicated that it was inclined to recommend that the District Court grant entry of default judgment. See ECF No. 31 at 1–2. The Court observed, however, that evidence establishing Pilot's requested damages was lacking. See id. Other than the statements in the pleadings and a solitary declaration from Bell, in Pilot's cross-complaint Pilot originally did not submit any evidence documenting its damages.[2] See id. Consequently, the Court ordered Pilot to submit additional proof of its damages. Id. at 2. As discussed below, Pilot submitted additional proof. ECF No. 32.

/ / /

/ / /

/ / /

/ / /

---

[2] In Pilot's defense, neither did Allstate or SPS submit any documentary evidence. See ECF Nos. 1, 9.

4

**C. Damages:**

Several different sums float around the parties' submissions. The parties variously mention costs and interest. But the numbers do not clearly align across the parties' submissions. While there are inferences of interest accrual and negotiation, it is not always apparent how the parties arrive at one number or another.

Pilot caused Allstate to issue checks in Manuel's name alone. ECF Nos. 27 at 4; 32, Bell Decl., ¶ 4. Those checks totaled $414,245.92. ECF Nos. 9 at 8; 27 at 4; 32, Bell Decl., ¶ 4. Copies of the checks are attached to Bell's supplemental declaration. ECF No. 32, Bell. Decl., Ex. A. The checks collectively equal $414,245.92. Id.

In May 2019 (around the time SPS first requested copies of the checks and tried to get Manuel to pay the mortgage) an agent of SPS' sent Allstate a statement reflecting a mortgage balance of $107,337.78, subject to $16.21 per diem interest. Id., ¶ 5. A copy of that statement is included with Bell's declaration. Id., Ex. B. SPS demanded payment from Allstate on April 13, 2020, and that demand was forwarded to Pilot as the claims adjustor. Id. ¶ 6, Ex. C.

Eventually, with no payment from Manuel forthcoming, SPS sued over the balance owed on the mortgage in May 2020. See ECF Nos. 1 at 2, 5, 7–8; 27 at 5. At that time, the balance was apparently $104.303.59. ECF Nos. 1 at 2, 5; 27 at 5. Allstate eventually reimbursed SPS for the outstanding balance plus a measure of costs and fees. ECF Nos. 27 at 5; 32, Bell Decl. at 5, ¶ 7. Pilot included a copy of a check with Bell's supplemental declaration. ECF No. 32, Bell Decl., EX. D. The check confirms that Allstate paid $110,943.57 to SPS on August 27, 2020. Id.

Notwithstanding these calculations, in their motion, Pilot seeks default judgment against Manuel for $112,806. ECF No. 27 at 3, 6, 9, 11. Bell also filed a declaration in support of that motion, stating that Allstate requested Pilot reimburse it for $112,806 in early 2021. ECF No. 27-1, Bell. Decl., ¶ 4. Of that number, $104,303.49 was the outstanding mortgage principal, $3,502.41 was the accrued interest, and $5,000 was a portion of the fees SPS initially incurred in suing. Id. Bell states that Pilot reimbursed Allstate for the requested $112,806. Id. ¶ 5.

In Bell's declaration submitted with the supplemental evidence, however, Bell asserts that Allstate demanded reimbursement of $110,943.57, not $112,806. ECF No. 32, Bell.

5

1  Decl., ¶ 8. Allstate made that request on September 8, 2020, not in early 2021. <u>Id.</u> A copy of an
2  email from Allstate to Bell confirms that Allstate requested $110,943.57 on September 8, 2020.
3  <u>See</u> <u>id.</u>, Ex. E. Pilot paid the $110,943.57 to Allstate. <u>Id.</u>, ¶ 9. A copy of a check confirms that
4  payment. <u>Id.</u>, Ex. F. That check is dated September 14, 2020. <u>Id.</u>

5  Pilot does not explicitly explain the discrepancy between the $112,806 identified in
6  their motion, and the $110,943.57. It is possible that the discrepancy is due to interest. <u>See</u> ECF
7  Nos. 27 at 9; 27-1 at 2. It is also possible that Allstate and SPS just agreed on that calculation, as
8  suggested by a declaration from Pilot's attorney of record, Michael Barnes. <u>See</u> ECF No. 32, Barnes
9  Decl., ¶ 2.

10  Some constituent numbers are subsumed in the chain of payments. Emails between
11  SPS and Pilot (on behalf of Allstate) from around July 22 to July 31, 2020, suggest that Allstate
12  and SPS did agree to a compromise of $5,000 in attorney's fees. <u>See</u> <u>id.</u> ¶ 2, Ex. G. SPS demanded
13  a principal payoff of $105,185.94, with a compromise daily interest of $15 beginning around July
14  14, 2021. <u>Id.</u> The final interest calculation is open-ended. <u>Id.</u> SPS did initially calculate a payoff at
15  $112,806. <u>Id.</u> Yet, the requested base principal of $105,185.94, plus $15 interest per day between
16  July 14, 2020 and the payoff date of August 27, 2020, does not equal the end payment reflected by
17  Allstate's $110,943.57 check to SPS. <u>See</u> <u>id.</u> Pilot's evidence does not clearly identify the dates
18  and calculations involved in reaching the final payout.

19  Whatever the calculation amongst SPS, Allstate, and Pilot actually was, on the proof
20  before the Court, Allstate paid SPS $110,943.57. Pilot reimbursed Allstate for the same.

21  ## II. STANDARD OF REVIEW

22  Federal Rule of Civil Procedure 55 mandates that "[w]hen a party against whom a
23  judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is
24  shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A
25  plaintiff may apply to the clerk for entry of default judgment when the plaintiff's claim is for a sum
26  certain or a sum that can be made certain through computation. Fed. R. Civ. P. 55(b)(1). In all other
27  cases, the moving party must apply the Court for default judgment. Fed. R. P. 55(b)(2). The Court
28  may conduct hearings when, in order to effectuate judgment, it is necessary to undertake an

accounting, determine the amount of damages, establish the truth of a party's allegations by evidence, or investigate any other issue. Fed. R. Civ. P. 55(b)(2)(A)–(D).

Entry of default judgment is within the discretion of the Court. E.g., Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); see Dreith v. Nu Image, Inc., 648 F.3d 779, 786 (9th Cir. 2011). Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages. Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Allegations of damages must be proven. E.g., Geddes, 559 F.2d at 560; See Nat'l Union Fire Ins. Co. of Pittsburgh v. Lutge, Case No.: 1:20-cv-01809 DAD JLT, 2021 WL 2109789, at *3 (E.D. Cal. May 25, 2021). When determining liability, a defendant's default may function as an admission of the plaintiff's well-pleaded allegations of fact. See Panning v. Lavine, 572 F.2d 1386 (9th Cir. 1978). However, the Court has the responsibility of determining whether the facts alleged in the complaint state a claim that can support the judgment. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). The District Court does not abuse its discretion in denying default judgment if a moving party's substantive claims lack merit. See Aldabe, 616 F.2d at 1092–93.

As stated, the Court does not presume that any factual allegations relating to the amount of damages are true. See Geddes, 559 F.2d at 560. The Court must ensure that the damages awarded are reasonable and demonstrated by the evidence. See id.; see also Wafer v. Suesberry, No. 1:07–cv–00865–AWI–BAM PC, 2014 WL 1330556, at *3 (E.D. Cal. Apr. 1, 2014). In discharging its responsibilities, the Court may conduct such hearings and make such orders as it deems necessary. See Fed. R. Civ. P. 55(b)(2). In assessing damages, the Court must review the facts of record, requesting more information if necessary, to establish the amount to which the plaintiff is lawfully entitled. See, e.g., Pope v. United States, 323 U.S. 1, 12 (1944).

Default judgments are typically disfavored. See Eitel 782 F.2d at 1472. The general rule is that cases should be resolved on their merits. See, e.g., id. Nevertheless, the United States Court of Appeals for the Ninth Circuit has directed that courts may consider a variety factors when determining whether to enter default judgment. Id. at 1471–72. Generally, courts apply the Eitel

factors. See id.; Johnson v. Pizano, No. 2:17-cv-1655-TLN-DB, 2019 WL 2499188, at *2 (E.D. Cal. June 17, 2019). Namely, courts will consider (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at issue; (5) the possibility of a dispute over material facts; (6) whether a defendant's default was due excusable neglect; and (7) the strong policy, underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel, 782 F.2d at 1471–72.

### III. DISCUSSION

**A. Pilot's Arguments:**

Pilot contends that it is entitled to default judgment because it satisfies the seven Eitel factors. ECF No. 27 at 5–11.

First, Pilot argues that it will be prejudiced if the Court does not enter default judgment because it effectively had to pay off Manuel's mortgage. Id. at 6. Manuel retained the full insurance payment for herself without paying off her obligations to SPS. Id. Pilot reimbursed Allstate for its payment of a total of $112,806. See id. at 6. Pilot argues that, absent entry of default judgment, its claims will go unsatisfied. Id. In Pilot's view, it lacks any other avenue for recovery of its losses. Id.. Pilot cites a few District Court cases indicating that plaintiffs would be prejudiced without default if there is no other recourse for recovery. Id.

The bulk of Pilot's argument is devoted to the second and third factors. Id. at 6–9. Essentially, Pilot argues that it has stated multiple claims on which relief may be granted. See id. Pilot argues that it has stated claims for conversion, negligent misrepresentation, unjust enrichment, breach of contract, money-had-and-received, implied contractual indemnification, and involuntary trust. Id. For example, Pilot notes that the insurance policy covering the property expressly stated that covered losses will be payable to mortgagees named in the policy, to the extent of their interest and in order of precedence. Id. at 8. In keeping the loss payout for herself, Pilot asserts that Manuel breached the insurance policy on which Pilot is now entitled to recover. Id.

As another example, Pilot argues that an implied right to indemnity exists in this case. Id. An implied right to indemnity exists when a party pays a debt for which another is liable, and which should have been paid by the latter party. Id. Because Pilot ultimately paid a debt that

8

1   Manuel owed and should have paid, Manuel must indemnify Pilot. Id.

2           As to the fourth Eitel factor, Pilot asserts that the $112,806 that it seeks is directly
3   proportional to the harm it incurred. Id. at 9. It is the amount that Pilot compensated Allstate for
4   because of Manuel's failure to pay her mortgage. See id.

5           Pilot then contends, on the fifth factor, that there is only a slim possibility of dispute
6   over material facts. Id. at 10. The clerk has already entered Manuel's default, and the Court must
7   take Pilot's well-pleaded factual allegations as true. Id. Pilot argues that the pleadings and Bell's
8   declaration establish the amount of damages at issue. See id. There can be no doubt that the various
9   payments occurred. Id. Allstate paid Manuel. Id. Allstate then reimbursed SPS. Id. And Pilot
10  reimbursed Allstate in turn. Id.

11          Sixth, in Pilot's view, Manuel's default did not arise due to excusable neglect. Id.
12  Manuel was properly served and simply did not respond, befitting her pattern of disregarding
13  demands to pay the mortgage. Id.

14          Finally, Pilot asserts that a decision on the merits is impossible because Manuel has
15  not defended against any of the claims in this action. See id. More than ten months have passed
16  without any action on Manuel's part. Id.

17      **B. Application of the Eitel Factors:**

18          Manuel, as cross-defendant, has not responded to Pilot's crossclaim. She has
19  defaulted. The Court thus takes well-pleaded facts pled in the crossclaim as true, though not claims
20  related to damages. See, e.g., Cripps, 980 F.2d at 1267; Geddes, 559 F.2d at 560. Allegations of
21  damages must be proven. E.g., Geddes, 559 F.2d at 560; Wafer, 2014 WL 1330556, at *3. The
22  Eitel factors support entry of default. Pilot's supplemental evidence satisfactorily establishes the
23  damages they paid to Allstate.

24          **i. Possibility of Prejudice to Plaintiff if Relief is Denied:**

25          Eitel's first factor weighs in Pilot's favor. Manuel has refused to appear and defend
26  against the claims asserted against her. More than a year has passed since SPS first filed this action.
27  There is no reason to believe that Manuel will suddenly appear in this case (or in a new one) in
28  order to allow Pilot to litigate its claims at trial. Absent entry of default judgment, Pilot will be

without other recourse for recovery, which various courts have found sufficient to establish prejudice. See, e.g., Furia v. McGrew, No. 2:19-cv-942-JAM-KJN (PS), 2020 WL 3888968, at *3 (E.D. Cal. July 10, 2020); Aussieker v. Stoccato Props., LLC, No. 2:19-cv-0089 TLN-DB-PS, 2019 WL 7184554, at *2 (E.D. Cal. Dec. 26, 2019); Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### ii. The Merits and Sufficiency of Plaintiff's Claims:[3]

The second and third Eitel factors test the substantive merit of Pilot's claims and the sufficiency of its pleadings. E.g., Landstar, 725 F. Supp. 2d at 920. Due to their interrelatedness, the Court considers them together. See Lutge, 2021 WL 2109789, at *3; Aussieker, 2019 WL 7184554, at *2. The Ninth Circuit has suggested, in District Courts' view, that the factors require a plaintiff to "state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175; see Danning, 572 F.2d at 1388; Landstar, 725 F. Supp. at 920.

Allstate assigned its rights against Manuel to Pilot. ECF No. 32, Bell Decl., ¶ 9. Taking Pilot's well-pleaded facts as true, Pilot stands in Allstate's shoes.[4] See Essex Ins. Co. v. Five Star Dye House, Inc., 38 Cal. 4th 1252, 1263–64 (2006). As indicated, Pilot reasserts each of the claims for which Allstate crossclaimed against Manuel. See ECF Nos. 9 at 10–13; 27 at 6–9.

Pilot has sufficiently stated a claim for equitable indemnification against Manuel. Because Pilot has established liability on that claim, it is unnecessary to address the others. The Court expresses no opinion on the merits of any of Pilot's other claims.

Pilot asserts a claim for "implied contractual indemnification." ECF No. 27 at 8. The Court believes that Pilot means to assert a claim of equitable indemnification more generally.

---

[3] District Courts, including in the Eastern District, have indicated that determination of a cognizable claim is necessary to satisfy the second and third factors, and have thus undertaken analysis of a plaintiff's claims (e.g., breach of contract). See, e.g., Lutge, 2021 WL 2109789, at *3; R & B of the Pac. v. Price, No. 2:18-cv-03257 KJM AC, 2019 WL 4877575, at *3 (E.D. Cal. Oct. 3, 2019); PepsiCo, Inc., 238 F. Supp. 2d at 1175.

[4] California recognizes the assignability of "things in action." Baum v. Duckor, Spradling & Metzger, 72 Cal. App. 4th 54, 64–65 (Cal. Ct. App. 1999); see AMCO Ins. Co. v. All Solutions Ins. Agency, LLC, 244 Cal. App. 4th 883, 891–92 (Cal. Ct. App. 2016). A "thing in action," statutorily defined, "is a right to recover money or other personal property by a judicial proceeding." Cal. Civ. Code § 953; Baum, 72 Cal. App. 4th at 64. A thing in action thus refers to a cause of action. See AMCO Ins. Co., 244 Cal. App. 4th at 891. "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." Cal. Civ. Code § 954.

See id. The Court will give Pilot the benefit of the doubt. The facts, as alleged, support a cause of action for equitable indemnification.

California recognizes equitable indemnity. Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1157–59 (2009); C.W. Howe Partners Inc. v. Mooradian, 43 Cal. App. 5th 688, 700 (Cal Ct. App. 2019). Generally speaking, indemnity references the obligation of one party to make good damage that another party has incurred. Prince, 45 Cal. 4th at 1157. There are two basic types of indemnity: express indemnity and equitable indemnity. Id. Express indemnity arises from explicit contractual language establishing a party's duty to indemnify another party under specified circumstances. Id. at 1158. Traditional equitable indemnity, on the other hand, does not require a contractual relationship. Id. Equitable indemnity "is premised on a joint legal obligation to another for damages," but it "does not invariably follow fault." Id. (quoting W. S.S. Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal. 4th 100, 114 (1994)). In other words, equitable indemnity applies in cases where a party has paid a debt for which some other party is primarily liable and which "in equity and good conscience" that other party should have paid. See, e.g., United Servs. Auto. Ass'n v. Alaska Ins. Co., 94 Cal. App. 4th 638, 644–45 (Cal. Ct. App. 2001). The doctrine is subject to principles of allocation of fault and equitable apportionment of loss. Prince, 45 Cal. 4th at 1158. Implied contractual indemnity arises from a contract that does not specifically mention indemnity and is viewed as a form of equitable indemnity. Id. at 1157.

The elements of an equitable indemnity claim are (1) a showing of fault on the indemnitor's part, and (2) "damages to the indemnitee for which the indemnitor is . . . equitably responsible." C.W. Howe Partners Inc., 43 Cal. App. 5th at 700 (quoting Bailey v. Safeway, Inc., 199 Cal. App. 4th 206, 217 (2011)) (internal quotation marks omitted); see Great W. Drywall, Inc. v. Interstate Fire & Cas. Co., 161 Cal. App. 4th 1033, 1041 (Cal. Ct. App. 2008). In an indemnity action, the factfinder must resolve whether an indemnitee was held legally responsible for damages to a third party and whether the indemnitor's conduct was a substantial factor in causing the harm. Great W. Drywall, Inc., 161 Cal. App. 4th at 1041. Because indemnity is subject to comparative fault analyses, a factfinder must also determine the parties' percentages of responsibly. See id.; see also Prince, 45 Cal. 4th at 1158; C.W. Howe Partners Inc., 43 Cal. App. 5th at 700.

Once more taking Pilot's well-pleaded facts as true, for the purposes of a default judgment analysis, Pilot makes out a plausible indemnification claim. Pilot alleges Manuel knew that she had to pay a mortgage obligation and simply did not. Pilot was effectively held responsible for that failure in being forced to reimburse Allstate for its payment of the debt owed to SPS. The second and third factors favor Pilot.

### iii. The Sum of Money at Stake:

The fourth Eitel factor directs courts to consider the amount of money at stake in relation to the seriousness of a defendant's conduct. Price, 2019 WL 4877575, at *3; PepsiCo, Inc., 238 F. Supp. 2d at 1176. The Court assesses whether the recovery sought is proportional to the harm caused by a defendant's actions. See Lutge, 2021 WL 2109789, at *6; Landstar, 725 F. Supp. 2d at 921; see also Curtis v. Illumination Arts, Inc., 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014).

Pilot requests $112,806. That is a relatively substantial sum, which could weigh against Pilot. See Lutge, 2021 WL 2109789, at *6. But it is evident that Pilot merely seeks what it paid to Allstate. Pilot seeks only proportional recovery. The fourth factor supports Pilot as well. See, e.g., Lutge, 2021 WL 2109789, at *6; Price, 2019 WL 4877575, at *3.

### iv. Possibility of Dispute Over Material Facts:

The possibility of any dispute over material facts is slim. Because of the clerk's entry of default, the Court accepts Pilot's well-pleaded allegations as true. Lutge, 2021 WL 2109789, at *6; Price, 2019 WL 4877575, at *3; Landstar, 725 F. Supp. 2d at 921–22; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Even though Manuel was properly served, she failed to appear to defend this action or contest any material facts. The fifth factor supports Pilot's position. Lutge, 2021 WL 2109789, at *6.

### v. Excusable Neglect:

There is no evidence that Manuel's failure to appear resulted from excusable neglect. Manuel was properly served with summons and the complaint, copies of the settlement stipulations, and a copy of Allstate's (now Pilot's) crossclaim. The record indicates that Manuel is aware of the suit and chose to ignore it. The possibility of excusable neglect seems remote given the length of the action and the multiple served documents. E.g., Lutge, 2021 WL 2109789, at *6;

Aussieker, 2019 WL 7184554, at *4; Price, 2019 WL 4877575, at *4. The sixth factor also works to Pilot's benefit. E.g., Lutge, 2021 WL 2109789, at *6; Aussieker, 2019 WL 7184554, at *4; Price, 2019 WL 4877575, at *4.

### vi. Policy Favoring Decisions on the Merits:

The Rules of Civil Procedure unquestionably favor decisions on the merits. See Eitel, 782 F.2d at 1472. When reasonably possible, cases should be decided on the merits. Id.; PepsiCo, Inc., 238 F. Supp. 2d at 1177. But that partiality is not dispositive. See PepsiCo, Inc., 238 F. Supp. 2d at 1177; Aussieker, 2019 WL 7184554, at *4; Price, 2019 WL 4877575, at *4.

Manuel's failure to answer both the complaint and the crossclaim makes a decision on the merits "impractical, if not impossible." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see Aussieker, 2019 WL 7184554, at *4. Entry of default judgment is warranted in such a circumstance. See Aussieker, 2019 WL 7184554, at *4; Price, 2019 WL 4877575, at *4; PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Landstar, 725 F. Supp. 2d at 922. The seventh factor, even if weighing against Pilot, does not preclude default judgment.

## C. Relief Requested:

The Court does not presume facts concerning the amount of damages are true. Pilot's submissions confirm that Allstate paid $110,943.57 to SPS in settlement of SPS' claims. ECF No. 32, Bell. Decl. ¶ 7, Ex. D. Pilot reimbursed Allstate for the same amount. Id. ¶ 9, Ex. F. SPS did request $112,806 in the email sent to Allstate (through Pilot). Id., Barnes Decl., Ex. G. But there is no evidence that either Pilot or Allstate ever *paid* $112,806. Id., Bell Decl., ¶ 7, 9, Exs. D, F.

The Court concludes that the evidence supports $110,943.57 in damages. Because Pilot has established a claim for equitable indemnification, the undersigned recommends granting the motion for default judgment in the amount of $110,943.57.

## IV. CONCLUSION

The Eitel factors weigh in favor of granting default judgment. Granting default judgment falls within courts' discretion. Aldabe, 616 F.2d at 1092. Based on all the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS**:

  1. Pilot's motion for default judgment (ECF No. 27) be **GRANTED**.

     2. Pilot be awarded $110,943.57 in damages.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 17, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE